IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANDREW HARLEY SPEAKER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NUMBER: |
| vs. | ) | 1:09-CV-1137 (WSD) |
| | ) | |
| DEPARTMENT OF HEALTH and | ) | |
| HUMAN SERVICES, CENTERS | ) | |
| FOR DISEASE CONTROL AND | ) | |
| PREVENTION | ) | |
| | ) | |
| DEFENDANT. | ) | |

## ANSWER

Defendant, Kathleen Sebelius, Secretary of the United States Department of

Health and Human Services, pursuant to Rule 8(b) of the Federal Rules of Civil

Procedure, hereby answers plaintiff's complaint.

## First Defense

Defendant asserts that plaintiff has waived any claim under the Privacy Act.

## Second Defense

Defendant asserts that plaintiff has failed to mitigate his damages.

## Third Defense

Defendant asserts that any alleged disclosure of information fell under one

or more of the exceptions under the Privacy Act.

**<u>Fourth Defense</u>**

Defendant asserts that plaintiff cannot establish a prima facie case under the Privacy Act and, therefore, cannot establish subject matter jurisdiction.

Responding specially to the numbered allegations of plaintiff's complaint, the defendant answers as follows:

**<u>INTRODUCTION</u>**

1. This paragraph generally contains conclusions of law and characterizations of the governing statutory provisions for this suit to which no answer is required, but insofar as one may be deemed necessary, they are denied.

**<u>JURISDICTION AND VENUE</u>**

2. Denied.

3. Admitted.

4. Admitted.

**<u>PARTIES</u>**

5. Defendant admits plaintiff is who he states he is. Defendant lacks sufficient knowledge or information at this time to form a belief as to whether he lives where he states he lives.

6. Defendant admits that the Centers for Disease Control and Prevention is an agency of the United States Government and maintains offices at 1600 Clifton

Road, Atlanta, Georgia, 30333, within the geographical boundaries of the Atlanta

Division of the Northern District of Georgia. The remainder of this paragraph

contains a characterization of a jurisdictional basis for this suit, to which no answer

is required, but insofar as one may be deemed necessary, it is denied.

7. This paragraph contains a citation to and/or recitation of the Federal

Rules of Civil Procedure to which no response is required.

8. Admitted.

## FACTUAL ALLEGATIONS

### A.      Plaintiff's Medical History

9. Defendant admits, based on plaintiff's medical records, that plaintiff was

born on July 22, 1975, and was an attorney, but denies the rest of paragraph 9

because defendant lacks sufficient knowledge or information to form a belief as to

the truth of the allegations relating to plaintiff's marital status or appearance of

health during January, 2007.

10. Admitted.

11. Defendant admits, based on plaintiff's medical records, that plaintiff

underwent a chest radiograph on January 8, 2007, which revealed a right upper

lobe infiltrate, but denies the rest of paragraph 11 because defendant lacks

sufficient knowledge or information to form a belief as to the truth of the

allegations relating to whether plaintiff's physician ordered radiographic imaging of his chest on or about January 8, 2007.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Defendant admits, based on plaintiff's medical records, that plaintiff had a CT scan done in March, 2007, which showed findings consistent with mycobacterial infection. Defendant denies the rest of paragraph 17 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 17.

18. Defendant admits, based on plaintiff's medical records, that plaintiff underwent a bronchoscopy on or about March 8, 2007, that smear results were negative for mycobacterial organisms, and that pathologic examination of lung tissue showed "focal nonnecrotizing granulomatous inflamation." Defendant denies the rest of the allegations in paragraph 18 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 18.

19.  Defendant admits, based on plaintiff's medical records, that the biopsy of the specimens taken on March 8, 2007, showed mycobacterium tuberculosis complex after 18 days incubation.  Defendant denies the rest of paragraph 19 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 19.

20.  Defendant admits, based on plaintiff's medical records, that plaintiff reluctantly agreed, on or about March 26, 2007, to begin a treatment regimen for TB.  Defendant denies the rest of paragraph 20 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 20.

21.  Defendant admits, based on plaintiff's medical records, that plaintiff was referred to a infectious disease specialist on or about March 26, 2007, was evaluated by an infectious disease specialist on March 28, 2007, but asserts the referral was because plaintiff was reluctant to undergo therapy.

22.  Defendant admits, on information and belief, and based on plaintiff's medical records, that the Georgia Public Health Laboratory (GPHL), on or about April 10, 2007, received material from a bronchial alveolar lavage to perform drug susceptibility testing.  Defendant further admits that the culture sample contained

little bacterial growth and had to be reincubated. Defendant denies the remaining allegations in paragraph 22.

23. Admitted.

24. Defendant admits the plaintiff was referred to the Fulton County Health Department's Tuberculosis Program in April, 2007, because he tested positive for TB, but defendant denies the remainder of paragraph 24 because defendant lacks sufficient knowledge or information to form a belief as to the exact date of the referral.

25. Defendant admits, based on plaintiff's medical records, that on or about April 25, 2007, the plaintiff presented to Fulton County Health Department's Tuberculosis Program, and that he was evaluated by Dr. Andrew Vernon. Defendant further admits Dr. Vernon was a CDC employee and Chief of the Clinical and Health Research Branch, Division of Tuberculosis Elimination, and that he was fulfilling his Medical Officer's clinical practice requirements at Fulton County Health Department's Tuberculosis Program on April 25, 2007. As part of meeting his clinical practice requirements, Dr. Vernon sees patients in said TB Clinic and consults on related infectious disease issues but has no administrative authority with respect to the Fulton County Health Department's Tuberculosis

Program.  Defendant denies plaintiff's suggestion that Dr. Vernon was working as a CDC employee while treating plaintiff.

26.  Defendant denies, based on information and belief and plaintiff's medical records, that the plaintiff complied with all the recommendations of his physicians and the public health officials involved in his care; specifically, defendant denies plaintiff followed their recommendations not to travel overseas and disregarded defendant's instructions not to fly from Europe to the United States on a commercial airline.  Defendant denies the rest of the allegations in paragraph 26 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations relating to whether plaintiff took his daily drug regimen.

27.  Defendant admits, based on plaintiff's medical records, that the plaintiff told his physicians and Fulton County public health officials that he planned to travel overseas to be wed.  Defendant denies the rest of the allegations in paragraph 27 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 27.

28.  Defendant admits, based on plaintiff's medical records, the first sentence of paragraph 28.  Defendant admits Dr. Vernon was aware plaintiff was

planning to travel and for that reason he requested expedited susceptibility testing of the isolate culture.  Defendant denies the remaining allegations in paragraph 28.

29.  Defendant admits that on April 26, 2007, Dr. Robert Cooksey was employed by the CDC in the Division of Tuberculosis Elimination as a microbiologist and that he is the father of the plaintiff's "fiancée."  Defendant admits that, upon learning of Dr. Cooksey's connection to the plaintiff, and with plaintiff's verbal permission, Dr. Vernon spoke with Dr. Cooksey.  Defendant denies the remaining allegations contained in paragraph 29.

30.  Admitted.

31.  Defendant admits, based on plaintiff's medical records, the allegations in the first sentence of paragraph 31.  The defendant admits the sputum sample was "smear negative," meaning that there was insufficient tuberculosis bacteria to be seen with a microscope, but denies that "smear negative" means that there is no tuberculosis bacteria.

32.  Defendant admits that on April 27, 2007, Dr. Metchock transported the Mycobacterium tuberculosis isolate from the GPHL.  Defendant admits the DNA preparation was performed by Dr. Cooksey at the CDC.  Defendant denies the remaining allegations contained in paragraph 32.

33.  Defendant admits, based on plaintiff's medical records, that on April 30, 2007, the GPHL report showed resistance to isonianzid and rifampin.  The preliminary results were called into Dr. Vernon, who was treating plaintiff at the Fulton County Health Department TB Clinic, as part of fulfilling his clinical practice requirements.  Defendant denies the remaining allegations in paragraph 33.

34.  Defendant admits, based on plaintiff's medical records, that on May 1, 2007, plaintiff's physician was verbally informed by GPHL of the preliminary evidence of drug resistance from the original bronchoscopy, that plaintiff was informed of the preliminary evidence of drug resistance, and plaintiff's infectious disease physician instructed him to stop first-line TB therapy.  Defendant denies plaintiff's allegation that "no evidence" of infectiousness means plaintiff was not infectious.  Defendant denies the remaining allegations contained in paragraph 34.

35.  Defendant admits, based on plaintiff's medical records, that on or about May 2, 2007, the Georgia State Lab issued a report concluding that plaintiff was resistant to isoniazid and rifampin, but denies that the Georgia State Lab report concluded that plaintiff had multi-drug resistant TB.

36.  Admitted.

37.  Admitted, except as to the providing of emphasis to portions of the quoted e-mail, which does not appear in the text of the email.

38.  Defendant denies that CDC officials at the highest level were aware of plaintiff's specific travel plans; that CDC officials acting in their official capacity were aware of plaintiff's specific travel plans; that CDC was treating plaintiff; and that CDC was planning treatment options around plaintiff's travel plans. Defendant asserts Dr. Vernon was treating plaintiff at the Fulton County Health Department TB Clinic as part of fulfilling his clinical practice requirements.  The remaining allegations in paragraph 38 are plaintiff's characterizations of his suit to which no answer is required, but to the extent one is required, they are denied.

39.  Defendant admits the allegations in paragraph 39, except to deny that a finding of no gyrA mutation rules out quinolone resistance.

40.  Denied.

41.  Defendant admits, based on plaintiff's medical records, that plaintiff informed his infectious disease physician and physicians at the Fulton County Health Department TB Clinic that he planned to travel overseas to be wed, but defendant asserts they advised plaintiff against such travel.  Defendant admits plaintiff told Dr. Vernon he was planning to travel abroad, but defendant further asserts Dr. Vernon advised the Fulton County Health Department leadership to

communicate with its legal staff regarding preventing plaintiff from traveling. Defendant denies the remaining allegations in paragraph 41 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 41.

42.  Defendant admits that, on or about May 3, 2007, Dr. Cooksey e-mailed Dr. Vernon about plaintiff's diagnosis, and Dr. Vernon replied on May 3, 2007. Defendant denies the remaining allegations in paragraph 42 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 42.

43.  Defendant admits, based on plaintiff's medical records, the allegations in paragraph 43, except to deny that GPHL's tests have the capability to rule-out XDR-TB, because GPHL does not do second-line anti-tuberculosis drug susceptibility drug testing.

44.  Defendant admits, based on plaintiff's medical records, the allegations in paragraph 44, except to deny that GPHL's tests have the capability to rule-out XDR-TB, because GPHL does not do second-line anti-tuberculosis drug susceptibility drug testing.

45.  Admitted, except to deny that the GPHL susceptibility results have the capability to rule out XDR-TB, because GPHL does not do second-line anti-tuberculosis drug susceptibility drug testing.

46.  Defendant admits the first and second sentence of paragraph 46. Defendant further states that the CDC lab's own molecular testing could not rule out the possibility that plaintiff had XDR-TB.  Defendant admits that the results of the CDC testing was communicated to Dr. Vernon.

47.  Defendant denies that the DNA sequencing can rule our XDR-TB and further denies the allegations contained in paragraph 47 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 47.

48.  Defendant admits the May, 2009, GPHL susceptibility results revealed at least MDR-TB, but denies that GPHL's tests have the capability to rule-out XDR-TB, because GPHL does not do second-line anti-tuberculosis drug susceptibility drug testing.

49.  Defendant admits, based on plaintiff's medical records, that on May 10, 2007, plaintiff, his father, his fiancée, Dr. Cooksey, in an unofficial capacity as father-in-law-to-be and not as a representative of CDC, plaintiff's infectious disease physician, and Dr. Benning, the Medical Director of the Fulton County

Department of Health Tuberculosis Clinic, met, but denies that this meeting took place at the Fulton County TB Clinic. Defendant asserts that the meeting took place at the office of Dr. William Blake, plaintiff's infectious disease doctor. Defendant denies that Dr. Vernon was present at this meeting.

50. Defendant denies the allegations in paragraph 50, and further asserts that the purpose of the meeting was to explicitly advise against and discourage plaintiff from traveling overseas.

51. Defendant denies the allegations in paragraph 51, and further asserts that the purpose of the meeting to explicitly advise against and discourage plaintiff from traveling overseas.

52. Defendant denies the allegations in paragraph 52, and further asserts plaintiff's infectious disease physician and Dr. Benning both advised plaintiff against overseas travel prior to plaintiff traveling. Defendant further asserts that Fulton County public health officials attempted to serve plaintiff with a letter advising him not to travel on May 11, 2007.

53. Defendant admits plaintiff left for Europe, on May 12, 2007, rather than May 14, 2007 as he had previously planned, and arrived in Paris on May 13, 2007. Defendant denies his physicians told plaintiff he was not infectious. Defendant denies the rest of paragraph 53 because defendant lacks sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in paragraph 53.

54. Admitted.

55. Admitted.

56. Admitted.

57. Defendant admits Dr. Vernon contacted Dr. Metchock on May 17, 2007, but asserts Dr. Vernon contacted Dr. Metchock on that date to ask whether someone in the Laboratory Branch of which she was Team Leader knew how to contact Dr. Cooksey because the induced sputum culture from plaintiff that had been collected at the Fulton County TB Clinic on April 25, 2007, was positive.

58. Defendant admits that on May 18, 2007, David Sikes was a microbiologist employed in the CDC Mycobacteriology Lab. Defendant admits, based on plaintiff's medical records, that David Sikes reviewed the drug plates on May 18, 2007; that David Sikes sent an e-mail on May 18, 2007, at 11.02 a.m., to Dr. Metchock; that Dr. Metchock noted the results "looked suspicious"; and that she informed Dr. Vernon of this information. Defendant denies the remainder of the allegations in paragraph 58.

59. Defendant denies the allegations in paragraph 59 and further asserts the prior tests lacked the capability to rule-out XDR-TB.

60.  Admitted, except to deny that the "Centers for Disease Control and Prevention Diagnostic Mycobacteriology Antimicrobial Susceptibility Testing Worksheet" characterizes the test results as "preliminary," and to deny that the worksheet stated that the preliminary test results met the criteria for XDR-TB.

61.  Defendant denies the allegations in the first sentence of paragraph 61 insofar as said Antimicrobial Susceptibility Testing Worksheet referred to in paragraph 60 does not characterize the test results as "preliminary."  Defendant denies the second sentence of paragraph 61, and further asserts that plaintiff has failed to pay the requisite fees necessary to process his September 2008 Freedom of Information request.

62.  Defendant denies the allegations in paragraph 62, and further asserts that plaintiff has never requested the results of any final testing and the QC standards used for those lab test results under the Freedom of Information Act. Defendant further asserts that plaintiff has never requested the "quality control documentation for each and every drug susceptibility test it performed on each and every culture tested" from plaintiff under the Freedom of Information Act. Defendant further asserts that there is no April 25, 2008 induced sputum culture and also asserts that plaintiff has failed to pay the requisite fees under the Freedom

of Information Act to process the "agar proportion drug-susceptibility testing results" for the "March 8, 2007 BAL Specimen."

62, Footnote 1. Footnote 1 contains conclusions of law and characterizations of the statutory provisions governing quality control standards to which no answer is required, but insofar as one may be deemed necessary, they are denied as incomplete. The court is referred to 42 U.S.C. § 263a and 42 C.F.R. § 493.1262.

63. Defendant admits, based on plaintiff's medical records, that the May 22, 2007, agar proportion drug-susceptibility testing showed results consistent with XDR-TB, but denies that Dr. Metchock recorded test results on May 22, 2007, as "XDR-TB."

64. Denied.

65. Defendant admits that Dr. Cooksey, plaintiff, and Sarah Cooksey were in Europe on or about May 18, 2007, but denies that other family members of the Cooksey or Speakers were in Europe because defendant lacks sufficient knowledge or information to form a belief as to the truth of those allegations. Defendant further admits that in testimony before Congress, Dr. Gerberding stated that defendant began trying to contact plaintiff on May 18, 2007 and, in fact, on May 18, 2007, a Quarantine Officer from CDC's Division of Global Migration and

Quarantine, Dr. David Kim, first learned that plaintiff, who was known to have a form of drug-resistant TB, had traveled overseas, and that Dr. Kim attempted to contact plaintiff on May 18, 2007. Further, defendant denies that there is no evidence that the CDC attempted to contact plaintiff between May 18 and May 22 and, in fact, plaintiff concedes in his complaint that Dr. Kim did, in fact, speak with plaintiff on May 22, 2007. Defendant denies the remaining allegations in paragraph 65.

66. Defendant admits that by May 22, 2007, Dr. Cooksey had returned to the United States and also admits that on May 22, 2007, the plaintiff was in Italy with Dr. Cooksey's daughter and that the CDC was trying to reach plaintiff because he was known to have a form of drug-resistant TB. Defendant denies that plaintiff's tuberculosis had been reclassified on May 18, 2007, and further denies the remaining allegations in paragraph 66 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

67. Defendant admits that plaintiff called Dr. David Kim by telephone, that Dr. Kim advised plaintiff that his TB status had changed, and that plaintiff should not return to the United States via commercial airline. Defendant denies the remaining allegations contained in paragraph 67.

68.  Defendant denies the allegations in paragraph 68 except to admit that Dr. Kim and plaintiff spoke by telephone on May 22, 2007, and that plaintiff agreed to call Dr. Kim the next day.

69.  Defendant admits Dr. Kim spoke with plaintiff on May 23, 2007; that Dr. Kim advised plaintiff that the CDC jet was not designed to transport individuals with contagious diseases long distances and no specific budget was dedicated to such events; and that plaintiff's options were to either receive treatment overseas, then return to the United States, or return to the United States in a manner that would not put other people at risk, and then receive treatment. Defendant admits Dr. Kim advised plaintiff to "get some fresh air," but also asserts that Dr. Kim told plaintiff to avoid public places and to not interact with other people.  Defendant denies the remaining allegations in paragraph 69.

69, footnote 2.  Defendant denies that the CDC made an unlawful disclosure of plaintiff's identity or that any statements made by the CDC led to the public vilification of plaintiff, and further denies the rest of footnote 2 of paragraph 69 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in footnote 2 of paragraph 69.

70.  Denied because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 70.

71.  Defendant admits plaintiff flew to Canada and rented a car.  Defendant denies the rest of paragraph 71 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 71.

72.  Defendant admits that at the time plaintiff boarded a plane for Canada there was not a "no fly order" in effect.  Defendant asserts plaintiff boarded a commercial airline contrary to CDC's directives and further that a no fly order went in to effect later that day.

73.  Defendant admits plaintiff crossed the United States-Canadian border in upstate New York on May 24, 2007.  Defendant asserts a Customs and Border Protection officer had previously entered plaintiff into the Treasury Enforcement Communications System subject record (an alert to law enforcement agencies) but the Customs and Border Protection officer at said border failed to stop plaintiff from entering the United States.  Defendant asserts the CDC contacted plaintiff and denies plaintiff contacted the CDC.  Defendant further asserts plaintiff was directed to Bellevue Hospital Center under provisional quarantine where plaintiff underwent additional testing.  Defendant denies the remainder of the allegations in paragraph 73.

74.  Defendant admits plaintiff was served with an "Order for Provisional Quarantine and Medical Examination" which would continue until May 28, 2007 at 1:00 p.m.  Defendant admits this is the first such order since approximately 1963, and further admits that the Order references a medical declaration from Dr. Kim, which in turn identifies the medical test results supporting the conclusion that plaintiff had XDR-TB.  Defendant denies that the test results did not support a diagnosis of XDR-TB.

75.  Defendant admits that, on or about May 25, 2007, plaintiff was under the care of Bellevue Hospital and that, while there, he was given three sputum tests.  Defendant further admits that although the three sputum smears were negative, the sputum cultures were positive.

76.  Defendant denies the first sentence of paragraph 76.  Defendant asserts plaintiff requested that he be returned home to Atlanta on a CDC aircraft rather than initiate treatment in New York.  Defendant admits the second sentence of paragraph 76.

77.  Denied, except to admit plaintiff's health insurer agreed to cover the cost of an air ambulance flight to Denver.

78.  Defendant admits plaintiff remained under restricted movement until rendered non-infectious at the National Jewish Medical and Research Center, and

further admits plaintiff underwent lung surgery while there. Defendant denies that plaintiff was under an Isolation Order issued by the CDC at the time he was rendered non-infectious at National Jewish Medical and Research Center and further asserts that the CDC's Isolation Order was rescinded on June 2, 2007, upon issuance of the Denver public health order. It was under Denver's order that plaintiff was under movement restrictions until plaintiff was rendered non-infectious. Defendant denies the rest of paragraph 78 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 78.

79. Defendant admits, based on plaintiff's medical records, that plaintiff's treating physicians at National Jewish Medical and Research Center did not diagnose plaintiff as having XDR-TB. Defendant asserts that CDC's laboratory findings were consistent with XDR-TB, and further that the tests by GPHL did not have the capability to rule-out XDR-TB, because GPHL does not do second-line anti-tuberculosis drug susceptibility drug testing. Defendant denies that CDC ever treated plaintiff.

## B. Privacy Act Claim

80. This paragraph consists of plaintiff's adoption and reallegation of plaintiff's previous allegations contained in paragraphs 1 through 79; the defendant

therefore incorporates its answers to the previous allegations with the same force and effect as if fully set forth herein.

81. Defendant admits that it held a press conference on May 29, 2007 and that, during that press conference, the CDC disclosed limited information that was not personally identifiable to plaintiff concerning plaintiff's medical condition. Defendant denies the remaining allegations contained in paragraph 81.

82. Defendant admits that the press conference held on May 29, 2007, was the first press conference held by the CDC concerning plaintiff. Defendant denies the remaining allegations in paragraph 82.

83. Defendant admits that the CDC stated during the May 29, 2007 press conference and other press conferences that an unnamed individual infected with XDR-TB had traveled on transatlantic flights. Defendant admits that the CDC did not inform the public about the allegations contained in the second sentence of paragraph 83, and asserts that it did not do so because these allegations are not true. Specifically, while plaintiff's sputum smears were negative, the sputum cultures tested positive. Furthermore, while plaintiff's level of contagiousness was low, he was not deemed "noncontagious." Defendant asserts the CDC's test results, which were consistent with XDR-TB, were not contradicted by other tests capable of ruling-out XDR-TB at any time before plaintiff traveled overseas.

Defendant asserts moreover that the plaintiff knew his lab tests showed he had MDR-TB before he traveled overseas, and further that plaintiff traveled overseas against the advice of his physician and the public health authorities.

84.   Denied.

85.   Defendant admits that it held a press conference on May 29, 2007, and that during that press conference the CDC disclosed limited information that was not personally identifiable to plaintiff concerning plaintiff's medical history and medical condition. Defendant denies the remaining allegations contained in paragraph 85.

86.   Defendant denies CDC advised plaintiff and his fiancée to drive to Denver for treatment. The remainder of paragraph 86 contains characterizations of plaintiff's suit to which no answer is required, but to the extent one is required, they are denied.

87.   Defendant admits a hearing was held before a subcommittee of the Senate on June 6, 2007. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 87.

88.   Defendant admits Dr. Julie Gerberding testified before the Senate on June 6, 2007, and used the word "mistake" in the context of plaintiff not being placed on the no fly list sooner and in giving plaintiff the benefit of the doubt that

plaintiff would cooperate with the CDC. Defendant denies the remaining allegations in paragraph 88.

89. Defendant admits Dr. Julie Gerberding testified before the Senate on June 6, 2007, that Senator Harkin was present, and that in his closing comments Senator Harkin used the words "not hold a lot of water" in connection with the total amount of time it would take to fly from Rome to New York to Atlanta in a G-3 airplane. The remainder of paragraph 89 contains plaintiff's characterizations of Senator Harkin's statements to which no answer is required, but to the extent one is required, they are denied.

90. Defendant admits that on June 6, 2007, Dr. Julie Gerberding testified before a Senate committee that May 18, 2007, was the date CDC officials first learned that plaintiff, who had a known form of drug resistant TB, may have traveled abroad. Defendant asserts this is because the employee responsible for assuring plaintiff did not leave the country, Dr. Kim, CDC Quarantine Officer, first learned that plaintiff may have traveled abroad on May 18, 2007. Defendant admits Dr. Cooksey, in an unofficial capacity as plaintiff's father-in-law-to-be, was aware plaintiff was planning to travel abroad before May 18, 2007. Defendant admits Dr. Vernon, in his capacity as one of plaintiff's physicians, as part of fulfilling his clinical practice requirements at the Fulton County Health Department

TB Clinic, was aware plaintiff was planning to travel abroad before May 18, 2007, but defendant asserts Dr. Vernon recommended before May 10, 2007,that the Fulton County Health Department leadership involve Fulton County legal counsel to determine whether plaintiff could be legally prevented from traveling. Defendant admits Dr. Metchock was aware plaintiff had some travel plans before May 18, 2007. Defendant denies the remaining allegations contained in paragraph 90.

91. Defendant admits that on June 6, 2007, Dr. Julie Gerberding testified, that May 22, 2007 was the date the CDC learned that plaintiff's lab results were consistent with XDR-TB. Defendant denies the remaining allegations contained in paragraph 91.

92. Denied because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding the date plaintiff was first informed his diagnosis was changed from XDR-TB to MDR-TB.

93. Denied because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 93.

94. Defendant admits that a press conference was jointly held on July 3, 2007, by the CDC and the National Jewish Medical and Research Center. Defendant further admits that plaintiff was identified by name at this press

conference, but notes that he was identified by plaintiff's treating doctors at National Jewish Medical and Research Center and that these doctors also read a statement by the plaintiff at plaintiff's request at this press conference. Defendant admits Dr. Mitchell Cohen, a CDC employee, participated in the joint press conference and that he reiterated a statement made earlier at that same press conference by plaintiff's treating doctors that recent laboratory results pertaining to the patient showed that MDR-TB was the predominant strain in plaintiff. Defendant denies that Dr. Cohen identified the plaintiff by name or made any unlawful and unauthorized disclosures.

95. Defendant admits Dr. Mitchell Cohen participated in a joint press conference held on July 3, 2007, and stated recent laboratory results pertaining to the patient were consistent with MDR-TB, and that plaintiff could have had a small number of XDR bacteria. Defendant denies there is any inconsistency in Dr. Cohen's statement that plaintiff could have had a small number of XDR bacteria insofar as it is possible for a patient to have more than one strain of *M. Tuberculosis* at the same time. The remaining allegations in the first sentence of paragraph 95 contain plaintiff's characterizations of his suit to which no answer is required, but to the extent one is required, they are denied. Defendant denies Dr.

Cohen claimed CDC had the "Gold Standard" of testing, and further denies the remaining allegations in the second sentence of paragraph 95.

96. Defendant admits Dr. Mitchell Cohen participated in a joint press conference on July 3, 2007, and stated the original bronchoscopy specimen which was consistent with XDR-TB was no longer available. Defendant moreover asserts that CDC never received a clinical specimen, but rather the CDC received an isolate (culture sample) of the *M. Tuberculosis* that was obtained from the clinical specimen which was inoculated into a culture at a hospital laboratory. Defendant denies that Federal regulations require original specimen material submitted to microbiology labs be retained. Defendant denies the remaining allegations in paragraph 96.

97. Defendant admits that on July 9, 2007, the CDC lab printed out the report described by plaintiff in paragraph 97, but asserts that this report, described as a preliminary report, was issued on May 22, 2007. Defendant asserts further that on April 29, 2008, a final report pertaining to the same specimen was issued. Defendant denies the last sentence of paragraph 97, insofar as defendant has responded to plaintiff's FOIA request.

98. Denied.

99. Defendant admits plaintiff underwent surgery on July 17, 2007, to remove the diseased portion of his lung, and that National Jewish Medical and Research Center Micobacteriology Clinical Reference Laboratory received some lung tissue. Defendant denies the remaining allegations in paragraph 99 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 99.

100. Denied because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 100.

101. Denied because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 101.

102. Denied because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 102.

103. Defendant denies CDC's TB program received a substantial increase in funding in December, 2007, but admits the CDC's TB program received an increase in funding for Fiscal Year 2008 of approximately $6 million dollars. Defendant denies the remaining allegations contained in the first sentence of paragraph 103. Defendant denies the second sentence of paragraph 103 because defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the second sentence of paragraph 103.

## THEORY OF RECOVERY

104. This paragraph consists of plaintiff's adoption and reallegation of plaintiff's previous allegations contained in paragraphs 1 through 103; the defendant therefore incorporates its answers to the previous allegations with the same force and effect as if fully set forth herein.

105. Denied.

106. Defendant denies the allegations contained in paragraph 106.

107. Defendant denies the allegations contained in paragraph 107.

108. Defendant denies the allegations contained in paragraph 108.

109. Defendant denies the allegations contained in paragraph 109.

110. Defendant denies the allegations contained in paragraph 110.

111. Defendant denies the allegations contained in paragraph 111.

112. Defendant denies the allegations contained in paragraph 112.

## DAMAGES

113. This paragraph consists of plaintiff's adoption and reallegation of plaintiff's previous allegations contained in paragraphs 1 through 112; the defendant therefore incorporates its answers to the previous allegations with the same force and effect as if fully set forth herein.

114. Defendant denies the allegations contained in paragraph 114.

115. Defendant denies the allegations contained in paragraph 115.

116. Defendant denies the allegations contained in paragraph 116.

117. Defendant denies the allegations contained in paragraph 117.

Defendant further denies that plaintiff is entitled to the relief requested in the Prayer for Relief, or to any relief whatsoever. In addition, defendant denies that plaintiff is entitled to a jury trial for an alleged violation of the Privacy Act.

In addition, defendant specifically denies all allegations in plaintiff's complaint not otherwise answered herein.

WHEREFORE, defendant requests that plaintiff's prayer for relief be denied, that this action be dismissed with prejudice, and that defendant be awarded costs and other such relief as may be deemed appropriate.

Respectfully submitted,

TONY WEST
Assistant Attorney General

DAVID E. NAHMIAS
United States Attorney

/s/Neeli Ben-David
NEELI BEN-DAVID
Assistant United States Attorney
Georgia Bar No. 049788
600 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
Tele: (404) 581-6000
Fax:  (404) 581-6150

JOHN R. TYLER
Assistant Branch Director
Federal Programs Branch

/s/Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tele:  (202) 305-7583
Fax: (202) 616-8202
Joshua.E.Gardner@usdoj.gov

Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I certify that the document to which this certificate is attached has been prepared with one of the font and point selections approved by the Court in LR 5.1B (Times New Roman, 14 pt.) for documents prepared by computer.

This 29th day of June, 2009.

/s/Joshua E. Gardner

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day, I electronically filed the foregoing

DEFENDANT'S ANSWER with the Clerk of Court using the CM/ECF system,

which will automatically send email notification of such filing to the following

attorneys of record:

Craig T. Jones
Page Perry, LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, GA 30338

This 29th day of June, 2009.

/s/Joshua E. Gardner